RECEIVED & FILED

Neal L. Wolf (California Bar No. 202129)
Todd L. Padnos (California Bar No. 208202)
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
One Embarcadero Center, Suite 400
San Francisco, CA 94111-3619
Telephone: 415-951-1100
Facsimile: 415-951-1180
*nwolf@llgm.com*

Adelaide Maudsley (Utah Bar No. 8791)
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
136 South Main Street #1000
Salt Lake City, UT 84101
Telephone: 801-320-6700
Facsimile: 801-359-8256
*amaudsle@llgm.com*

John F. Murtha (Nevada Bar No. 835)
WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511-1149
Telephone: 775-688-3016
Facsimile: 775-688-3088
*jmurtha@woodburnandwedge.com*

Attorneys for Official Committee of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 (joint administration) |
| MEGO FINANCIAL CORP. et al., | Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304 and BK-N-03-52470 through BK-N-03-52474 |
| Debtors. | |
| Official Committee of Unsecured Creditors of Mego Financial Corp. et al., | Adv. Proc. No. _____ |
| Plaintiff, | |
| v. | **No Hearing Required** |
| Textron Financial Corporation, | |
| and | |
| C. Alan Bentley, in his capacity as Chapter 11 Trustee, | |
| Defendants. | |

## ADVERSARY COMPLAINT

Pursuant to 11 U.S.C. § 105, 28 U.S.C. §§ 157(b) and 1334, and Rule 7001 of the Federal Rules of Bankruptcy Procedure, Plaintiff, the Official Committee of Unsecured Creditors (the "Committee"), for and on behalf of the bankruptcy estates of the debtors in the above-captioned jointly-administered cases, brings this adversary proceeding against Defendants, Textron Financial Corporation ("Textron") and C. Alan Bentley, in his capacity as chapter 11 trustee (the "Trustee"), seeking, among other things and as more fully set forth below, (i) a declaratory judgment that the Debtors' obligations on the postpetition financing provided by Textron have been satisfied, (ii) reallocation of payments made to Textron to ensure that the Debtors' obligations on the postpetition financing have been satisfied; (iii) a declaratory judgment that Textron is undersecured with respect to its prepetition interests and, as such, is not entitled to reimbursement of its professionals' fees and expenses on account of its prepetition claim, (iv) a declaratory judgment, in the alternative, that Textron is only entitled to payment of its professionals' fees and expenses to the extent that the interests on its prepetition claim are valid and enforceable; (v) a detailed accounting of payments made to Textron for reimbursement of its professionals' purported fees and expenses, (vi) recovery of certain property of the Debtors' estates from Textron, including payments made to Textron on account of its undersecured prepetition secured claim, and (vii) disgorgement of certain payments for fees and expenses of the Trustee and the Trustee's professionals and reallocation and pro rata distribution of available amounts among all holders of allowed administrative expense claims. For its Complaint in this matter against Textron and the Trustee, the Committee respectfully alleges as follows:

## PARTIES

1.      The Committee was duly appointed in the above-captioned jointly-administered cases by the United States Trustee pursuant to 11 U.S.C. § 1102.

2

2.      Textron is a Delaware corporation and is generally engaged in the business of providing financing to resort development and golf course management and development companies.

3.      The Trustee was duly appointed in the above-captioned jointly-administered cases by the Court pursuant to 11 U.S.C. § 1104.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a) and (b)(2), in that this action arises under Title 11 of the United States Code and arises in and relates to the above-captioned jointly-administered cases, which are currently pending in this Court.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## CORE PROCEEDING

6.      This is a core proceeding under 28 U.S.C. § 157(b).

## GENERAL ALLEGATIONS

### The Commencement of the Bankruptcy Cases

7.      On July 9, 2003 (the "Initial Debtors' Petition Date"), each of Mego Financial Corp. dba Leisure Industries Corporation of America ("Mego"), Leisure Homes Corporation fka Preferred Equities Corporation ("Leisure Homes"), Leisure Resorts Corporation ("Leisure Resorts"), Leisure Services Corporation ("Leisure Services"), and Atlantic Development Corporation (collectively, the "Initial Debtors") filed voluntary chapter 11 petitions.

8.      On July 11, 2003, the Trustee was appointed as the chapter 11 trustee of the Initial Debtors.

9.      On July 21, 2003 (the "Subsequent Debtors' Petition Date") and together with the Initial Debtors' Petition Date, the "Applicable Petition Date"), each of Steamboat Suites, Inc. ("Steamboat"), Cimarron Golf Club, LLC, Overlook Food and Beverage Company, Colorado

3

Land and Grazing Corporation ("CLGC"), and Brigantine Preferred Properties, Inc. (collectively, the "Subsequent Debtors" and together with the Initial Debtors, the "Debtors") filed voluntary chapter 11 petitions.

10.     On July 25, 2003, the Trustee was appointed as the chapter 11 trustee of the Subsequent Debtors.

11.     On July 25, 2003 (as amended August 1, 2003 and as further amended October 16, 2003), the United States Trustee appointed the Committee.

### The Debtors' Assets

12.     Prior to the sale of substantially all of the Debtors' assets in these cases (the "November 3 Sale"), the Debtors owned (i) certain real property in Nevada, Arizona, and Mississippi, (ii) a golf course property in California ("Cimarron"), and (iii) eight timeshare resorts, including the Tango Bay Resort (fka Ramada Vacation Suites at Tango Bay) in Orlando, Florida (the "Orlando Resort"); the Las Vegas - Villas, the Las Vegas - Winnick, Las Vegas - Terraces, Las Vegas - Terraces Four, Las Vegas - Towers, Las Vegas - Suites, Las Vegas - Fountains, Las Vegas - Plaza (collectively, the "Las Vegas Resorts"); the Indian Shores Resort in Florida ("Indian Shores"); Steamboat Suites in Colorado ("Steamboat"); Hilltop in Colorado ("Hilltop"); Brigantine Inn and Villas in New Jersey ("Brigantine"); Reno Spa Resort in Nevada ("Reno"); and the White Sands Resort in Hawaii ("White Sands").

### Textron's Prepetition Interests

13.     During the approximately seven-year period prior to the Applicable Petition Date, Textron or one of its affiliates made loans to certain of the Debtors (the "Textron Loans").

14.     Upon information and belief, as of the Applicable Petition Date, the total outstanding amount on the Textron Loans was approximately $46,000,000.

15.     To secure repayment of the Textron Loans, the Debtors granted Textron security interests in certain real and personal property interests, including contract rights, equipment, sold

4

and unsold timeshare intervals, inventory, fixtures, consumer notes receivables, and development rights (the "Textron Prepetition Collateral"). The Committee has challenged the validity, priority, and enforceability of portions of the security interests granted to Textron with respect to the Textron Prepetition Collateral in two adversary proceedings presently pending before this Court.

16. Textron has asserted a prepetition security interest in assets that were not part of the November 3 Sale.

### **Textron's Provision of Postpetition Financing**

17. On August 14, 2003, the Court entered the Final Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral and (III) Granting Adequate Protection (the "Final Financing Order") (Docket No. 289).[1]

18. Pursuant to the Final Financing Order, Textron agreed to provide postpetition financing to the Debtors in the amount of up to $8,000,000 (the "Postpetition Obligations").

19. Pursuant to Paragraph 5 of the Final Financing Order, the Postpetition Obligations were to be treated as Superpriority Claims, subject only to Paragraph 7 which described the terms of the Carve-Out.

20. Pursuant to Paragraph 6 of the Final Financing Order, to secure payment of the Postpetition Obligations, Textron received extensive postpetition liens on all of the Debtors' unencumbered property, priming liens on all of the Debtors' property encumbered prepetition by the liens and interests of the Textron Prepetition Lenders, and junior liens on all of the Debtors' property encumbered prepetition by the liens and interests of other lenders (collectively, the "Liens"):

> As security for the Obligations, [Textron] ... shall have and is hereby granted ... valid and perfected security interests in, and liens on, all present and after-acquired property of the Debtors of

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributed to them in the Final Financing Order.

any nature whatsoever, … as follows: (a) pursuant to Bankruptcy Code § 364(c)(2), a first priority, perfected Lien upon all of the right, title and interest in, to an under all Collateral held by any Debtor that is not otherwise encumbered by a validly perfected security interest or lien on the Applicable Filing Date …; (b) pursuant to Bankruptcy Code § 364(d)(1), a first priority, senior, priming, perfected Lien upon all right, title and interest in, to and under the Textron Prepetition Collateral held by any Debtor except to the extent there was a valid prepetition lien in favor of any lender other than the Textron Prepetition Lenders, which lien would not be primed; and (c) pursuant to Bankruptcy Code § 364(c)(3), a junior, perfected Lien upon all of the right, title and interest in, to and under all Collateral (other than the Textron Prepetition Collateral) held by any Debtor, including, without limitation, a validly perfected security interest or lien in existence as of the Applicable Filing Date, or a valid lien perfected (but not granted) after the Applicable Filing Date to the extent such perfection in respect of a pre-Applicable Filing Date claim is expressly permitted under the Bankruptcy Code; it being understood that the validity of any such junior lien on collateral encumbered by valid liens of Heller Financial Corporation, shall be subject to further order of the Bankruptcy Court.

Final Financing Order ¶ 6.

21.    Paragraph E of the Final Financing Order provides in relevant part: "The Textron Prepetition Lenders are entitled, pursuant to Bankruptcy Code §§361 and 363(e), to adequate protection of their interests in the Textron Prepetition Collateral, *to the extent valid and enforceable*." Final Financing Order ¶ E (emphasis added).

22.    Pursuant to Paragraph 8 of the Final Financing Order, the Debtors were authorized to use Textron Cash Collateral in exchange for provision of adequate protection to the Textron Prepetition Lenders.    The adequate protection generally took the form of: (i) Replacement Liens and Superpriority Claims that were subject to and junior to the liens granted to secure payment of the Postpetition Obligations; (ii) "pay[ment] [of] all reasonable fees, costs and charges that have been or may be incurred by the Textron Prepetitioin Lenders

6

(including without limitation, the reasonable fees and out-of-pocket disbursements of any financial consultants, and counsel advising the Textron Prepetition Lenders) in connection with the enforcement and protection of the rights and interests of the Textron Prepetition Lenders in the Chapter 11 Cases"; (iii) payments to the Textron Prepetition Lenders "in cash in an amount equal to interest accrued and unpaid on the Textron Prepetition Obligations at the non-default rate(s) set forth in the applicable Textron Prepetition Loan Documents and all other accrued and unpaid fees, costs and charges owing thereunder"; (iv) the Debtors' payment to the Textron Prepetition Lenders of "net cash proceeds" from the "sale or other disposition of any Textron Prepetition Collateral, or any Collateral subject to a Replacement Lien" but only "after payment or satisfaction in full of the obligations owed to creditors with senior liens on such Collateral, including, without limitation, the Lenders"; and (v) payment to the Textron Prepetition Lenders of amounts held in lock-box accounts related to the Land Lot Receivables Facility and the Receivables Loan Agreement. Final Financing Order ¶ 8.

23. The Credit Agreement established January 12, 2004 as the termination date (the "Maturity Date") with respect to the Postpetition Obligations. The Trustee and Textron subsequently agreed to extend the Maturity Date to February 19, 2004 (the "Extended Maturity Date").

## The November 3, 2003 Sale

24. On August 25, 2003, the Trustee filed a motion (the "Sales Procedures Motion") (Docket No. 322) seeking the entry of an order establishing and implementing procedures for the sale of substantially all of the Debtors' assets, including much of the Textron Prepetition Collateral.

7

25.     On September 26, 2003, the Court entered an order (the "Sales Procedures Order") (Docket No. 534) granting the Sales Procedures Motion.

26.     On October 21, 2003, the Trustee filed the Notice Of Providing Information To Prospective Bidders About Distribution of Secured Claims Against Assets To Be Sold (the "Secured Claims Distribution Notice") (Docket No. 614).

### The Sale of the Las Vegas Resorts

27.     At an auction and hearing held on November 3, 2003, the Court determined that the bid of Doerge Capital, LLC ("Doerge") and its affiliates in the amount of $12,567,359 (as adjusted) (the "Doerge Bid") was the winning bid for the assets of the Las Vegas Resorts.

28.     On December 2, 2003, the Court entered an order (the "Doerge Sale Order") (Docket No. 895) authorizing the sale of the assets of the Las Vegas Resorts to Doerge.

29.     On or about December 17, 2003, the sale of the assets of the Las Vegas Resorts to Doerge closed (the "Doerge Closing").

30.     The Secured Claims Distribution Notice reveals that the Trustee believed the Las Vegas Resorts were encumbered by approximately $14,563,000 in purportedly secured prepetition claims, with Textron holding approximately $5,3000,000 of that amount.

31.     Paragraph F of the Doerge Sale Order provides in relevant part:

> The Trustee, in his discretion and based upon consultation and reasonable approval the of (sic) Committee, within fifteen (15) days after the sales have closed, may pay the proceeds from the sales, net of HOA payments and customary closing costs and other costs of sale (the "Net Proceeds"), to the prepetition secured lenders who have demonstrated to the Trustee the ability and willingness to return some or all of the payments received within seven (7) business days of the Trustee's request for any reason at all, without the necessity of a court order, consistent with the procedures established in the Order Regarding Procedure for Distribution to Prepetition Secured Lenders Under Order Authorizing (A) Sale of Certain

Assets Free and Clear of Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Executory Contracts to First Continental Corporation. The Trustee shall pay the Net Proceeds to the postpetition secured lender up to the amount necessary to satisfy the Debtors' outstanding obligations on the postpetition financing.

Doerge Sale Order ¶ F.

32.    On December 18, 2003, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas) (Docket No. 987) indicating, among other things, the Trustee's intent to make a *provisional* distribution to Textron in the amount of $3,180,529.00 in its role as a prepetition secured lender (the "Textron Las Vegas Distribution").

33.    On December 23, 2003, the Committee filed the Disapproval of the Official Committee of Unsecured Creditors to Trustee's Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas) (Docket no. 1028).

34.    On December 24, 2003, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas) Notwithstanding Committee's Disapproval (Docket No. 1021) indicating, among other things, that the Trustee would make the Textron Las Vegas Distribution to Textron, notwithstanding the Committee's disapproval of the same.

35.    Upon information and belief, the Trustee made the Textron Las Vegas Distribution to Textron shortly thereafter.

36.    On February 12, 2004, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas Remaining Balance) (Docket no. 1259) indicating, among other things, the Trustee's intent to make a *provisional* distribution to Textron in the amount of $933,141.00 in its role as prepetition secured lender from remaining proceeds from the sale of the Las Vegas Resorts (the "Textron Second Las Vegas Distribution").

37.     On February 18, 2004, the Committee filed the Disapproval of the Official Committee of Unsecured Creditors to Trustee's Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas Remaining Balance) (Docket no. 1278).

38.     On February 20, 2004, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Las Vegas Remaining Balance) Notwithstanding Committee's Disapproval (Docket no. 1292) indicating that the Trustee would make the Textron Second Las Vegas Distribution to Textron, notwithstanding the Committee's disapproval of the same.

39.     Upon information and belief, the Trustee made the Textron Second Las Vegas Distribution to Textron shortly thereafter.

### The Sale of the Indian Shores, Steamboat, Hilltop, Brigantine, Reno, and White Sands Resorts

40.     At an auction and hearing held on November 3, 2003, the Court determined that the bulk bid of Celebrity Resorts LLC ("Celebrity") in the amount of $25,000,000 (the "Celebrity Bid") was the winning bid for the assets of the Indian Shores, Steamboat, Hilltop, Brigantine, Reno, and White Sands (collectively, the "Celebrity Resorts").

41.     On November 20, 2003, the Court entered an order (the "Celebrity Sale Order") (Docket No. 847) authorizing the sale of the assets of the Celebrity Resorts to Celebrity.

42.     On or about November 26, 2003, the sale of the assets of the Celebrity Resorts to Celebrity closed (the "Celebrity Closing").

43.     The Secured Claims Distribution Notice reveals that the Trustee believed that the Celebrity Resorts were encumbered by approximately $25,200,000 in purportedly secured prepetition claims, with Textron holding almost $20,000,000 of that amount.

44.     Paragraph D of the Celebrity Sale Order provides in relevant part:

> On a *provisional* basis, the Trustee, in his discretion and based upon consultation and reasonable approval the of (sic) Committee, within

10

fifteen (15) days after the sales have closed, may pay the proceeds from the sales, net of HOA payments and customary closing costs and other costs of sale (the "Net Proceeds"), to the prepetition secured lenders who have demonstrated to the Trustee the ability and willingness to return some or all of the payments received within seven (7) business days of the Trustee's request for any reason at all, without the necessity of a court order. The Trustee shall pay the Net Proceeds to the postpetition secured lender up to the amount necessary to satisfy the Debtors' outstanding obligations on the postpetition financing.

Celebrity Sale Order ¶ D (emphasis added).

45.     On December 18, 2003, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Celebrity) (Docket No. 988) indicating, among other things, the Trustee's intent to make a *provisional* distribution to Textron in the amount of $10,257,263.00 in its role as a prepetition secured lender (the "Textron Celebrity Distribution").

46.     On December 23, 2003, the Committee filed the Disapproval of the Official Committee of Unsecured Creditors to Trustee's Notice of Intent to Distribute to Textron Financial Corporation (Celebrity) (Docket no. 1029).

47.     On December 24, 2003, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Celebrity) Notwithstanding Committee's Disapproval (Docket No. 1020) indicating, among other things, that the Trustee would make the Textron Celebrity Distribution to Textron, notwithstanding the Committee's disapproval of the same.

48.     Upon information and belief, the Trustee made the Textron Celebrity Distribution to Textron shortly thereafter.

49.     On February 12, 2004, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Celebrity Remaining Balance) (Docket no. 1258) indicating, among other things, the Trustee's intent to make a *provisional* distribution to Textron in the

11

amount of $782,483.00 in its role as a prepetition secured lender from remaining proceeds from the sale of the Celebrity Resorts (the "Textron Second Celebrity Distribution").

50.    On February 18, 2004, the Committee filed the Disapproval of the Official Committee of Unsecured Creditors to Trustee's Notice of Intent to Distribute to Textron Financial Corporation (Celebrity Remaining Balance) (Docket no. 1279).

51.    On February 20, 2004, the Trustee filed its Notice of Intent to Distribute to Textron Financial Corporation (Celebrity Remaining Balance) Notwithstanding Committee's Disapproval (Docket no. 1291) indicating that the Trustee would make the Textron Second Celebrity Distribution, notwithstanding the Committee's disapproval of the same.

52.    Upon information and belief, the Trustee made the Textron Second Celebrity Distribution to Textron shortly thereafter.

## The Sale of the Orlando Resort

53.    At an auction and hearing held on November 3, 2003, the Court determined that the bid of Westgate Resorts, Limited ("Westgate") in the amount of $22,000,000 (the "Westgate Bid") was the winning bid for the assets of the Orlando Resort.

54.    The Secured Claims Distribution Notice revealed the Trustee's belief that Textron did not have a prepetition security interest in the Orlando Resort.

55.    On November 20, 2003, the Court entered an order (the "Westgate Sale Order") (Docket No. 847) authorizing the sale of the assets of the Orlando Resort to Westgate.

56.    On or about November 26, 2003, the sale of the assets of the Orlando Resort to Westgate closed (the "Westgate Closing").

57.    Paragraph E of the Westgate Sale Order provides in relevant part:

> The Trustee, within fifteen (15) days after the Closing, shall pay to Heller and Textron, based on their respective lien positions, the proceeds from the sale, net of (i) HOA cure costs and HOA 2003 Operating Costs, and (ii) the Bulk Bid Reimbursement and the Break-up Fee. The Trustee shall calculate the payments in accordance with paragraph 13 hereof. Heller and Textron shall be permitted to apply the payment in reduction of their respective claims.

Westgate Sale Order ¶ E.

58.     Upon information and belief, shortly after the Westgate Closing, the Trustee *provisionally* distributed amounts totaling approximately $1,000,000 from the sale of the Orlando Resort to Textron, which amount Textron applied toward satisfaction of the Postpetition Obligations.

## Cimarron Sale

59.     Textron asserts a prepetition security interest in the approximate amount of $9,100,000 with respect to Cimarron.

60.     On or about February 11, 2004, the Court approved the sale of Cimarron to CT Cimarron, LLC in the amount of $5,250,000 (the "Cimarron Sale").

61.     On or about February 26, 2004, the Cimarron Sale closed.

62.     Upon information and belief, the Trustee has not yet made any distributions from the Cimarron Sale to Textron.

63.     At the hearing before the Court on February 11, 2004, the Trustee sought authority to make distributions to Textron on account of the Postpetition Obligations. The Committee asserted that the Postpetition Obligations had been satisfied. Accordingly, the Committee, the Trustee, and Textron placed on the record a reservation of rights. Such

13

reservation provided that the Committee and the Debtors' estates reserved all rights to seek subsequent reallocation of the amounts paid to Textron with respect to Cimarron.

## Other Asset Sales

64.     During the pendency of the above-captioned cases, the Trustee has sold other property, including, but not limited to, various parcels of real property in Nevada, in which Textron asserts prepetition and postpetition security interests (collectively, the "Property Sales").

65.     In most, if not all, of the Property Sales, the amount for which the subject property was sold was less than the amount of the prepetition security interest asserted by Textron.

66.     Notwithstanding the foregoing, Textron has consented to each such sale and has agreed to accept the net proceeds of the sale to release its prepetition security interest on the subject property.

67.     On or about February 13, 2004, Textron received $1,482,985.86 in net proceeds from the sale of the Calvada Eye Parcel toward satisfaction of its prepetition security interest on such property.

68.     Upon information and belief, Textron has received other distributions of net proceeds with respect to the Property Sales.

69.     At the hearing before the Court on February 11, 2004, the Trustee sought authority to make distributions to Textron on account of the Postpetition Obligations. The Committee asserted that the Postpetition Obligations had been satisfied. Accordingly, the Committee, the Trustee, and Textron placed on the record a reservation of rights. Such

reservation provided that the Committee and the Debtors' estates reserved all rights to seek subsequent reallocation of the amounts paid to Textron with respect to the Property Sales.

## Interest, Costs, Charges, and Fees Related to the Postpetition Financing

70.    Under the terms of the Credit Agreement, the Trustee, on behalf of the Debtors, was to use the proceeds of the Postpetition Obligations only for the items and in the amounts and parameters set forth in a pre-approved budget (the "Budget"), a copy of which was appended to the Credit Agreement.

71.    The Budget includes a line-item for "Trustee's Professionals - fees and expenses" in the total amount of $1,934,757.

72.    The fees and expenses of the Trustee's professionals through December 31, 2003 exceeded the Budget line-item for such fees and expenses.

73.    Upon information and belief, the Trustee's professionals have received payment in full of their fees and expenses through December 31, 2003.

74.    The Budget includes a line item for "Leisure Industries, et al. Trustee fees" in the total amount of $986,501.

75.    The Trustee has received payment of a substantial portion of his fees and expenses in an amount up to $985,000 through December 31, 2003.

76.    The Budget includes a line-item for "Textron professional fees" in the total amount of $750,000.

77.    To date, neither Textron nor its professionals have filed with the Court or submitted to the United States Trustee or other parties in interest, including the Committee, any

monthly fee or expense statements or fee applications disclosing their fees and the supporting documentation and descriptive time entries for the same.

78.    Through the end of December 2003, Textron requested and, upon information and belief, received payment from the Trustee or the Debtors' estates in the amount of approximately $1,938,500 for fees and expenses of Textron's professionals.

79.    Alternatively, upon information and belief, Textron paid its professionals' fees and expenses at all relevant times and simply charged such amounts against the Postpetition Obligations.

80.    Alternatively, upon information and belief, Textron used distributions received from the Trustee to pay its professionals' fees and expenses rather than to pay down the amounts outstanding on the Postpetition Obligations.

81.    Regardless of the mechanics, Textron has received payment of its professionals' fees and expenses in the amount of at least $1.9 million, and, therefore, has received payments exceeding the Budget line-item for such fees and expenses by more than $1.1 million.

82.    Textron continues to incur professional fees and expenses and to seek payment of such fees and expenses from the Trustee and the Debtors' estates.

83.    Upon information and belief, Textron continues to receive payments of its fees and expenses, including those related to its defense of the adversary proceedings commenced by the Committee, from the Trustee and the Debtors' estates, notwithstanding the Trustee's acknowledgment that Textron is undersecured.

84. The Budget includes a line item for "Miscellaneous expense contingency" in the total amount of $250,000, which amount was allocated to the fees and expenses of the Committee's professionals by order entered October 2, 2003 (Docket No. 554).

85. The Committee's professionals have not received payment of their allowed fees and expenses up to the Budget line-item for such fees and expenses.

86. Having applied the Textron Las Vegas Distribution, the Textron Celebrity Distribution, and other provisional distributions from asset sales toward the prepetition indebtedness, Textron maintains that approximately $5,000,000 remains outstanding on the Postpetition Obligations and that interest and other costs and charges continue to accrue on the same.

87. On several occasions in recent months, the Committee has requested from Textron a loan history with respect to the Postpetition Obligations.

88. Textron has acknowledged to the Committee that Textron has maintained and continues to maintain such loan history in the ordinary course. Nevertheless, Textron has refused to provide such loan history to the Committee. As of the date of this Complaint, Textron has yet to deliver such loan history to the Committee.

89. In the absence of such a loan history, the Committee is unable to ascertain (i) what amounts were advanced on the Postpetition Obligations, (ii) when those amounts were advanced, (iii) what amounts have been repaid on the Postpetition Obligations, (iv) when those repayments were made, and (v) what additional amounts have been charged to the Postpetition Obligations, such as interest and other costs.

90.     The Trustee has recently informed the Committee that he does not have available funds to pay certain allowed administrative expense claims of the Debtors' estates, including the remaining amounts in fees and expenses of the Committee's professionals up to the Budget line-item for such fees and expenses.

91.     As set forth in the "Corrected Motion to Approve Stipulated Order Approving Use of Cash Collateral" dated March 18, 2004 (Docket No. 1405) (the "Cash Collateral Motion"), the Trustee states that the Postpetition Obligations should have been repaid by the Extended Maturity Date but have not been.

92.     Upon information and belief, on or shortly after February 19, 2004, Textron served the Trustee with a notice of default under the Credit Agreement.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment That The Postpetition Obligations Were Satisfied In Full On Or Before January 12, 2004)

93.     The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

94.     The amount of the Postpetition Obligations was, at all relevant times, equal to or less than $8,000,000.

95.     To date, Textron has received distributions from the Trustee or the Debtors' estates in the form of proceeds from the November 3 Sale and other asset sales in excess of $15,000,000.

96.     Most, if not all, such distributions to Textron were expressly described as provisional in nature under applicable orders of this Court and, as such, subject to disgorgement or reallocation.

97.     The Trustee has acknowledged that Textron has received distributions sufficient to satisfy the Postpetition Obligations. The Trustee has not, however, formally taken the position that the Postpetition Obligations have been satisfied in full.

98.     The Trustee has, however, refused to take steps to compel Textron to allocate amounts previously received toward satisfaction of the Postpetition Obligations.

99.     Textron has taken the position that approximately $5,000,000 remains outstanding on the Postpetition Obligations.

100.    The Committee disputes Textron's position.

101.    Accordingly, a dispute exists between the parties as to whether the Postpetition Obligations have been satisfied in full.

102.    The Committee respectfully requests a declaration from this Court that pursuant to the terms of the Final Financing Order, the Doerge Sale Order, and the Celebrity Sale Order, among others, the distributions Textron received from the Trustee should be applied first to the Postpetition Obligations and then, to the extent excess amounts remain, if any, toward satisfaction of the Textron Loans, such that the Postpetition Obligations were satisfied in full on or before January 12, 2004.

## SECOND CAUSE OF ACTION
### (Reallocation Of Payments Made To Textron To Satisfy The Postpetition Obligations)

103.    The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

104.    To effect the relief sought and made in the declaration in the First Cause of Action, the Committee requests that Textron and, to the extent necessary, the Trustee be compelled to allocate properly and immediately amounts previously paid to Textron toward

19

satisfaction of the Postpetition Obligations.  Under the circumstances, the Committee asserts that

such reallocation, as permitted under applicable orders of this Court, will be more expeditious

and cost-effective than disgorgement and repayment.

### THIRD CAUSE OF ACTION
### (Declaratory Judgment That Textron Is Not Fully Secured
### With Respect To Its Prepetition Interests And Therefore Not Entitled To Interest,
### Fees, And Other Charges Provided For In Section 506 Of The Bankruptcy Code)

105.    The Committee repeats and restates the allegations contained in the above-stated

paragraphs as if set forth fully herein.

106.    The Trustee has sold or otherwise disposed of substantially all of the Debtors'

assets, including much of the Textron Prepetition Collateral.

107.    The amounts obtained in the sale and disposition of the Textron Prepetition

Collateral are less than the amounts of the prepetition security interests Textron asserts on such

property.

108.    Textron has taken the position that it is fully secured with respect to the Textron

Prepetition Collateral.

109.    The Committee disputes Textron's position and asserts that Textron is

undersecured with respect to the Textron Prepetition Collateral.

110.    Accordingly, a dispute exists between the parties as to whether and to what extent

Textron is secured with respect to the Textron Prepetition Collateral.

111.    The Committee respectfully requests a declaration from this Court that because

the amounts for which the Textron Prepetition Collateral have been sold or disposed are less than

the amounts of the prepetition security interests Textron asserts, Textron is not fully secured with

respect to the Textron Prepetition Collateral.

112.    Textron does not dispute that, under Section 506 of the Code, an undersecured creditor is not entitled to recovery of any legal fees, expenses, and interest accruing after the petition date.

113.    Textron has, however, taken the position that its entitlement to interest, legal fees and expenses, and other costs does not stem from Section 506 of the Bankruptcy Code but instead stems from the adequate protection provisions of the Final Financing Order.

114.    The Committee disputes Textron's position.  Even if Textron were entitled to postpetition interest on its prepetition claim as adequate protection, Textron is not entitled to receive, and the Court did not award, nor was it authorized to award, reimbursement of postpetition legal fees and expenses to Textron, including those incurred in its defense of the adversary proceedings commenced by the Committee.  Section 506 of the Code prohibits such an award.

115.    The Committee, therefore, requests a declaration from this Court that because it is not fully secured with respect to the Textron Prepetition Collateral, Textron is not entitled to interest and reasonable fees, costs, or charges provided for in Section 506 of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION
### (In The Alternative, Declaratory Judgment That Under The Final Financing Order, Textron Is Only Entitled To Payment Of Its Professional Fees And Expenses To The Extent Its Interests Are Valid Enforceable

116.    The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

117.    The Committee has challenged, among other things, the validity and enforceability of Textron's interests in the Textron Prepetition Collateral in two adversary proceedings presently pending before this Court.

118.    Textron has incurred professional fees and expenses in the defense of those adversary proceedings.

119.    Textron maintains that its entitlement to payment of its professional fees and expenses, including those incurred in the defense of those adversary proceedings, stems from the adequate protection provisions of the Final Financing Order.

120.    The Committee disputes Textron's position. If the adequate protection provisions of the Final Financing Order are found to be applicable, the Committee asserts that Textron is not entitled to payment of its professional fees and expenses unless, until, and only to the extent that its interests with respect to the Textron Prepetition Collateral are determined to be valid and enforceable.

121.    Accordingly, a dispute exists between the parties as to whether and to what extent Textron is entitled to payment of its professional fees and expenses under the provisions of the Final Financing Order.

122.    The Committee, therefore, requests a declaration from this Court that if the provisions of the Final Financing Order apply, Textron is only entitled to payment of its professional fees and expenses if, when, and to the extent that its interests with respect to the Textron Prepetition Collateral are determined to be valid and enforceable.

22

## FIFTH CAUSE OF ACTION
### (Accounting Of Professional Fees And Expenses And Determination That Such Fees And Expenses Are Not Reasonable)

123.    The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

124.    The Budget appended to the Credit Agreement provides for "Textron professional fees" in the amount of $750,000.

125.    Paragraph 8 of the Final Financing Order provides for payment of "reasonable fees, costs and charges that have been or may be incurred by the Textron Prepetition Lenders … in connection with the enforcement and protection of the rights and interests of the Textron Prepetition Lenders in the Chapter 11 Cases."

126.    Textron asserts that its professionals have incurred and are entitled to payment of fees and expenses in an amount in excess of $1,900,000.

127.    The Committee contends that all, or at least some portion of, such fees and expenses are excessive and not reasonable.

128.    The Committee asserts that a significant portion of such fees and expenses was incurred prior to the Initial Debtors' Petition Date or the Subsequent Debtors' Petition Date.

129.    The Trustee has paid all or some portion of the fees and expenses of Textron's professionals with monies of the Debtors' estates.

130.    Because Textron's professionals have failed to submit monthly fee and expense statements or fee applications, the reasonableness of the fees and expenses of Textron's professionals has not been determined.

131.    The Committee respectfully requests a declaration from this Court requiring Textron to provide a detailed accounting of the fees and expenses of Textron's professionals, which accounting shall distinguish those fees and expenses incurred with respect to the Textron Prepetition Obligations from those fees and expenses incurred with respect to the Postpetition Obligations, and setting a date certain by which such accounting must be provided to the United States Trustee, the Trustee, the Committee, and other parties in interest.

132.    The Committee respectfully requests a further declaration from this Court that pursuant to the provisions of the Final Financing Order, Section 330 of the Bankruptcy Code, Section 506 of the Bankruptcy Code, and other applicable statutory authority, all or some portion of the fees and expenses of Textron's professionals are excessive and not reasonable and, as such, are disallowed.

## SIXTH CAUSE OF ACTION
### (Recovery And Turnover Of Estate Property Under Section 542 Of The Bankruptcy Code)

133.    The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

134.    By virtue of the declarations sought and made above, Textron has received property of the Debtors' estates in the form of payments for interest, costs, fees, professional fees and expenses, and other charges, to which it is not entitled.

135.    Pursuant to Section 542 of the Bankruptcy Code, Textron is required to turnover to the Trustee and to otherwise account to the Debtors' estates for the value of such property.

## SEVENTH CAUSE OF ACTION
### (Disgorgement of Certain Fees and Expenses of the Trustee and the Trustee's Professionals and Reallocation and Pro Rata Distribution Thereof)

136.    The Committee repeats and restates the allegations contained in the above-stated paragraphs as if set forth fully herein.

137.    The Trustee's professionals have received reimbursement of fees and expenses in excess of the amount allocated for such fees and expenses in the Budget.

138.    Upon information and belief, the Trustee has received reimbursement of fees and expenses in excess of the amount allocated for such fees and expenses in the Budget.

139.    Excluding the Trustee and the Trustee's professionals, other holders of allowed administrative expense claims of the Debtors' estates remain unpaid.

140.    Upon information and belief, the Debtors' estates may be administratively insolvent at the present time and will depend largely on the Trustee's ability to liquidate remaining assets and the Debtors' estates success on various pending litigation claims. As of the date of this Complaint, the Trustee has indicated that he has no cash to pay all allowed administrative claims.

141.    Under Section 503 of the Code and the priorities distribution scheme of Section 506 of the Code, the Trustee is not permitted to pay the administrative expense claims of some holders and not others, nor can he make distribution on allowed administrative expense claims in disproportionate percentages.

142.    Accordingly, the Committee requests that this Court require the Trustee and the Trustee's professionals to disgorge amounts received for reimbursement of fees and expenses in excess of amounts set forth in the Budget.

143.    The Committee further requests that this Court effect a pro rata distribution of available amounts, including those recovered from the Trustee and the Trustee's professionals, among all holders of allowed administrative expense claims.

## REQUEST FOR RELIEF

**WHEREFORE**, the Committee respectfully requests the following relief:

1.    Pursuant to the First Cause of Action, a declaration from this Court that the Postpetition Obligations were satisfied in full on or before December 31, 2003.

2.    Pursuant to the Second Cause of Action, a judgment by this Court compelling Textron and, to the extent necessary, the Trustee to allocate properly and immediately amounts previously paid to Textron toward the satisfaction of the Postpetition Obligations.

3.    Pursuant to the Third Cause of Action, a declaration from this Court that Textron is not fully secured with respect to the Textron Prepetition Obligations and, as such, is not entitled to interest and reasonable fees, costs, or charges provided for in Section 506 of the Bankruptcy Code.

4.    Pursuant to the Fourth Cause of Action, a declaration from this Court that if the adequate protection provisions of the Final Financing Order apply, Textron is only entitled to payment of its professional fees and expenses if, when, and to the extent that its interests with respect to the Textron Prepetition Collateral are determined to be valid and enforceable.

5.    Pursuant to the Fifth Cause of Action, a declaration from this Court (i) requiring Textron to provide a detailed accounting of the fees and expenses of Textron's professionals and setting a date certain by which such accounting must be provided to parties in interest, and

(ii) determining that all or some portion of the fees and expenses of Textron's professionals are excessive and not reasonable and, therefore, disallowed.

6.     Pursuant to the Sixth Cause of Action, a judgment by this Court (i) determining that Textron has received property of the Debtors' estates to which it is not entitled, (ii) requiring Textron to turnover immediately such property to the Trustee pursuant to Section 542 of the Bankruptcy Code.

7.     Pursuant to the Seventh Cause of Action, a judgment by this Court (i) requiring the Trustee and the Trustee's professionals to disgorge amounts received for reimbursement of fees and expenses in excess of amounts set forth in the Budget, and (ii) effecting a pro rata distribution of available amounts among all holders of allowed administrative expense claims.

8.     Costs of suit; and

9.     Such other and further relief as the Court deems just and appropriate.

Dated: March 3/, 2004                Respectfully submitted,

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: _____

Neal L/ Wolf (California Bar No. 202129)
Todd L. Padnos (California Bar No. 208202)
LeBOEUF LAMB GREENE & MacRAE, LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111-3619
Telephone: 415-951-1100
Facsimile: 415-951-1180

Adelaide Maudsley (Utah Bar No. 8791)
LeBOEUF LAMB GREENE & MacRAE, LLP
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101
Telephone: 801-320-6700
Facsimile: 801-359-8256

John F. Murtha (Nevada Bar No. 835)
WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511-1149
Telephone: 775-688-3016
Facsimile: 775-688-3088

*Attorneys for the Official Committee of Unsecured
Creditors*

Plaintiff's Address:
Official Committee of Unsecured Creditors
c/o H. Malcolm Lovett, Jr., Chairperson
Strategic Capital Corporation
520 Post Oak Blvd. #320
Houston, Texas  77027

SL 90762.4 10832 00527 03/30/04 05:40pm

| B 104<br>(Rev. 2/92) | **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br>OF MEGO FINANCIAL CORP., et al. | TEXTRON FINANCIAL CORPORATION and<br>C. ALAN BENTLEY, in his capacity as Chapter<br>11 Trustee<br><br>RECEIVED & FILED<br>2004 MAR 31 PM 12:03<br>U.S BANKRUPTCY COURT<br>PATRICIA GRAY, CLERK |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>John F. Murtha, Esq.<br>Woodburn and Wedge<br>P.O. Box 2311<br>Reno, Nevada 89505   775-688-3000 | ATTORNEYS (If Known)<br>Joan C. Wright, Esq.<br>Allison, MacKenzie, et al.<br>P.O. Box 646, Carson City, NV  89702 |
|---|---|

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The complaint seeks declarations regarding administrative payments to secured lenders
and the trustee and disgorgement of amounts necessary to allow pro rata payment of
all administrative claims.

**NATURE OF SUIT**
(Check the one most appropriate box only.)

| | | |
|---|---|---|
| ☐ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation<br>of a Chap. 11, Chap. 12, or Chap. 13 Plan | ☒ 456 To obtain a declaratory<br>judgment relating to any of<br>foregoing causes of action |
| ☐ 435 To Determine Validity, Priority, or<br>Extent of a Lien or Other Interest in<br>Property | ☐ 426 To determine the dischargeability<br>of a debt 11 U.S.C. § 523 | |
| ☐ 458 To obtain approval for the sale of both<br>the interest of the estate and of a co-<br>owner in property | ☐ 434 To obtain an injunction or other<br>equitable relief | ☐ 459 To determine a claim or cause of<br>action removed to a bankruptcy<br>court |
| ☐ 424 To object or to revoke a discharge<br>11 U.S.C. § 727 | ☐ 457 To subordinate any allowed claim<br>or interest except where such<br>subordination is provided in a plan | ☐ 498 Other (specify) |

| ORIGIN OF<br>PROCEEDINGS<br>(Check one box only.) | ☒ 1 Original<br>Proceeding | ☐ 2 Removed<br>Proceeding | ☐ 4 Reinstated<br>or Reopened | ☐ 5 Transferred<br>from Another<br>Bankruptcy<br>Court | ☐ CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND<br>$ none specified | OTHER RELIEF SOUGHT<br>Declaratory Relief | ☐ JURY DEMAND<br>Check only if demanded in complaint |
|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>Mego Financial Corp., et al. | BANKRUPTCY CASE NO. 03-52300 thru 03-52304<br>and 03-52470 thru 03-52474 |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING<br>Nevada | DIVISIONAL OFFICE<br>Reno | NAME OF JUDGE<br>Zive |
|---|---|---|

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF Official Committee<br>of Unsecured Creditors | DEFENDANT<br>Textron Financial Corporation | ADVERSARY PROCEEDING NO.<br>03-05111 & 03-05125 |
|---|---|---|

| DISTRICT<br>Nevada | DIVISIONAL OFFICE<br>Reno | NAME OF JUDGE<br>Zive |
|---|---|---|

| FILING<br>FEE (Check one box only.) | ☒ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|

| DATE<br>03/31/04 | PRINT NAME<br>John F. Murtha, Esq. | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|